Robinson and others *v.* Sutter and others.[*]

*(Circuit Court, N. D. Illinois.    November 26, 1881.)*

PRACTICE—REHEARING—AFFIRMANCE OF FORMER DECREE.

> Where, on a rehearing, granted in order that newly-discovered proof could be brought in and considered, the evidence failed to show that the apparatus in use prior to plaintiffs' invention was an anticipation thereof, the former decree was affirmed.

In Equity.   On rehearing.

*Munday, Evarts & Adcock,* for complainants.

BLODGETT, D. J.   The distinctive feature of complainants' device for resweating tobacco is the water tank in the bottom of his outer chamber, so that by keeping this water at the proper temperature the atmosphere of the outer chamber can be kept warm and humid, whereby the process of resweating will be induced and carried on to whatever extent shall be deemed desirable.

Since the former hearing defendants claim to have discovered the use of other devices prior to Robinson's invention, which they insist so far anticipate the Robinson device as to make it void for want of novelty; and a rehearing was granted defendants in order that this newly-discovered proof could be brought in and considered.   The first is an apparatus used by John Watt for resweating tobacco; the second, two sweating rooms or boxes used by Louis Specht in the tobacco factory of August Beck, of this city; and third, the Huse patent of July, 1865.

No model of the Watt sweat room is shown, but from the description given of it in the testimony it is evident that it was merely a close vault heated by coils of steam pipe, and into which live steam was discharged in greater or less quantities.   It did not have the water tank shown in the Robinson device, nor anything equivalent to it, but had specific provision for drawing off the water formed by condensation of the steam.

The Specht device was also, as I conclude from the model, only a room or box heated with coils of steam pipe, and one or two of the lower pipes perforated so as to permit the escape of the steam These perforations were on the under side of the pipes, so that the steam was blown downward onto the floor of the room, where it came in contact with, perhaps, a small quantity of water which had collected in the troughs, so that this discharged steam, as it rose and diffused itself through the room, was to some extent saturated with

[*]Reversed.  See 7 Sup. Ct. Rep. 376.

the water which it had taken up, or was so near the condensing point as to be wet steam. This Specht apparatus has been altered so often that I find it almost impossible to determine from the proof just how it was constructed and operated prior to the date of Robinson's patent. But I am satisfied that a tank of water or any large body of water was not deemed an essential part of the apparatus.

The construction of first one trough and afterwards three troughs satisfies me that the main purpose of these troughs was not to hold a mass or body of water as an essential element of the mechanism, but to catch and carry off the water formed by the condensation of the steam. So that, while the Specht sweat-box may, in its practical operation, have approximated somewhat more closely to the Robinson invention than any others which have been shown in the proof, it did not, in my estimation, anticipate Robinson's invention.

As for the Huse patent of 1865, it was only a box heated with steam coils, in which the tobacco was to be placed and heated by the radiation of heat from the pipes and the introduction of live steam.

The former decree in the case is affirmed.